UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ESTELL DAVIS,

    Plaintiff,

    v.

WELLS FARGO BANK, N.A., TRUSTEE, AS TRUSTEE FOR SERIES HBV 2007-3, et al.,

    Defendants.

_____/

No. C 10-0489 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The motion of defendants Wells Fargo Bank, N.A., Trustee, as Trustee for Series HBV 2007-3, and GMAC Mortgage, LLC, for summary judgment came on for hearing before this court on September 21, 2011. Plaintiff opposed the motion, but did not appear. Defendants appeared by their counsel Yaron Shaham. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS defendants' motion.

**BACKGROUND**

Plaintiff Estell Davis is the owner of property located in Oakland, California, which she initially acquired in February 2002. In November 2006, plaintiff refinanced her existing loan with a loan from BankUnited FSB ("BankUnited"), in the amount of $465,000. (BankUnited is not a defendant in this case.) The loan was secured by a promissory note and deed of trust on the property.

Plaintiff was provided with, and executed, a Truth-in-Lending Disclosure Statement ("TILDS"). At the same time, plaintiff also executed a disclosure concerning the loan and certain terms of the adjustable rate mortgage. Defendant GMAC Mortgage LLC ("GMAC")

became the servicer of the loan in April 2007.

Plaintiff fell behind in the payments, and on October 21, 2008, a Notice of Default and Election to Sell under Deed of Trust was recorded at the Alameda County Recorder's Office. In November 2008, a Corporation Assignment of Deed of Trust was recorded, in which BankUnited assigned its interest in the deed to defendant Wells Fargo Bank, as Trustee for Series HBV 2007-3 ("Wells Fargo"). On January 23, 2009, a Notice of Trustee's Sale was recorded, setting a sale date of February 18, 2009.

On March 27, 2009, the Notice of Default was rescinded. On June 8, 2009, plaintiff entered into a new "Interest Only Adjustable Rate Loan Modification" with GMAC as agent for lender, and the loan modification was recorded. Plaintiff again fell behind in the payments, and on September 29, 2009, another Notice of Default and Election to Sell Under Deed of Trust was recorded in the Alameda County Recorder's Office. On December 30, 2009, a Notice of Trustee's Sale was recorded, setting the date for the sale on January 29, 2010.

Plaintiff filed the present action on February 3, 2010, against GMAC and Wells Fargo, and against mortgage brokers Jason Haynes ("Haynes") and Lakeshore Funding ("Lakeshore"). The date for the foreclosure sale was subsequently continued, and the parties agreed that GMAC would take no action to foreclose on the property during the pendency of the action.

On April 26, 2010, plaintiff filed a first amended complaint against the same four defendants. In a July 8, 2010, order, the court granted the motion to dismiss, with leave to amend.

On August 9, 2010, plaintiff filed a second amended complaint, alleging a claim of failure to make disclosures required by the federal Truth in Lending Act ("TILA"), against GMAC, Wells Fargo, Haynes, and Lakeshore; a claim of violation of California Business & Professions Code § 17200, based on alleged TILA violations, against GMAC and Wells Fargo; a claim under California Financial Code § 22302, against Wells Fargo and GMAC; a claim under § 17200, based on alleged violation of Financial Code § 22302, against Wells

Fargo and GMAC; a claim under California Civil Code § 2954.4(b), against Wells Fargo and GMAC; and a claim of breach of fiduciary duty, against Haynes and Lakeshore.

GMAC and Wells Fargo filed a motion to dismiss. In an order issued on November 18, 2010, the court denied the motions to dismiss the TILA claim and the § 17200 claim; granted the motion to dismiss the Financial Code § 22302 claim, the § 17200 claim based on Financial Code § 22302 claim, and the Civil Code § 2954.4 claim.

On January 31, 2011, plaintiff requested entry of default against Haynes and Lakeshore. The clerk entered default as to those defendants on February 2, 2011. Plaintiff has not yet moved for entry of default judgment.

## DISCUSSION

A.  Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.  The Parties' Motions

The causes of action remaining in the case are the TILA claim, alleged against GMAC, Wells Fargo, Haynes, and Lakeshore; the § 17200 claim, alleged against GMAC

and Wells Fargo; and the breach of fiduciary claim, alleged against Haynes and Lakeshore.

GMAC and Wells Fargo seek summary judgment as to the TILA claim, arguing that they did not originate the loan and are not liable for the acts of BankUnited (the loan originator); that the TILA claim is time-barred; and that the TILA claim is without merit, as all required disclosures were provided to plaintiff. They also seek summary judgment as to the § 17200 claim, based on the failure of the TILA claim.

With regard to the merits of the TILA claim, defendants assert that all required TILA disclosures were made, including disclosure of the annual percentage rate, which was clearly stated in the TILDS to be 8.2812%. They also assert that the interest rate in the Note is clearly and conspicuously disclosed, as the BankUnited Adjustable Rate Note states, "I will pay interest at a yearly rate of 8.2500%." Defendants suggest that plaintiff may be confusing the interest rate (8.25%), the initial one-month interest rate (1.2%), and the annual percentage rate (8.2812%). They assert that the interest rate is the percentage of the loan amount that is charged for borrowing money, while the annual percentage rate is a calculated rate that includes the interest rate and takes into account other lender fees.

In her "counter-motion," plaintiff argues that the note was "illegal per se" because it violated TILA by failing to clearly and conspicuously disclose the "interest rate," by failing to disclose that the "initial interest rate" was discounted, by failing to disclose the "interest rate" that the payment schedule was based on, and by failing to disclose the certainty of negative amortization.

Plaintiff also contends that GMAC and Wells Fargo are liable for the violations of TILA in the loan that their "predecessor-in-interest" originated. According to plaintiff, because the TILA disclosures were inadequate – referring to the above-described failure to disclose interest rate, failure to disclose that initial rate was discounted, failure to disclose negative amortization, failure to disclose the interest rate that the payment schedule was based on – the deficiencies were "apparent" on the face of the loan documents, and GMAC and Wells Fargo therefore have assignee liability.

The court finds that defendants' motion must be GRANTED and that plaintiff's

4

motion must be DENIED. The dispositive issue in this case is whether or not BankUnited failed to make the material disclosures required by TILA. Only if the required disclosures were not made will the court need to consider whether the TILA claim is time-barred, and whether GMAC and Wells Fargo bear any liability as BankUnited's assignees.

TILA requires that lenders provide certain disclosures to borrowers reflecting the terms of the legal obligation between the parties. TILA's implementing regulation, Regulation Z, 12 C.F.R. § 226, sets out TILA's disclosure requirements. See Fimbres v. Chapel Mortg. Corp., 2009 WL 4163332, at *8 (S.D. Cal. 2009).

Disclosure requirements mandated by TILA and Regulation Z depend upon "whether the loan in question is an 'open-end credit' transaction or a 'closed-end credit' transaction." Demarest v. Quick Loan Funding, Inc., 2009 WL 940377, at *3 (C.D. Cal. Apr. 6, 2009) (citation omitted). An open-end credit plan is a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. Id. (quoting 15 U.S.C. § 1602(i)). In contrast, "[c]losed-end credit" is defined as "consumer credit other than 'open-end credit.'" 12 C.F.R. § 226.2(a)(10).

Here, the deed of trust loan was a "closed-end credit" transaction since the note provided for a single loan advance rather than repeated extensions of credit. In loan transactions "other than an open end credit plan," TILA requires that the creditor make the following disclosures: the identity of the creditor; the "amount financed," and a statement of the consumer's right to obtain a written itemization of the amount financed; the "finance charge;" the "finance charge" expressed as an "annual percentage rate;" the sum of the amount financed and the finance charge, which must be labeled "total of payments;" the "total sale price;" descriptive explanations of the terms "amount financed," "finance charge," "annual percentage rate," "total of payments," and "total sale price;" the number, amount, and due dates or period of payments scheduled to repay the total of payments; and disclosures regarding other matters such as late payment fees. 15 U.S.C. § 1638(a); see

5

also id. § 1602(u).

The TILDS that was provided to plaintiff in this case clearly states that the "annual percentage rate" or "cost of your credit as a yearly rate" is 8.2812%; that the "finance charge," or "dollar amount the credit will cost you" is $1,300,693.50; that the "amount financed" or "amount of credit provided to you or on your behalf" is $461,667.56; and that the "total of payments" or "amount you will have paid after you have made all payments as scheduled" is $1,762,361.06.

The TILDS also discloses the payment schedule – 12 monthly payments at $1220.25, commencing on January 1, 2007; 12 monthly payments at $1311.77, commencing on January 1, 2008; 8 monthly payments at $1410.15, commencing on January 1, 2009; 447 monthly payments at $3840.83, commencing on September 9, 2009; and one final monthly payment at $3844.61, due December 1, 2046.  At the bottom of the page are miscellaneous disclosures regarding, e.g., late fees, prepayment penalty, whether someone buying the property can assume the loan, whether the loan contains a variable-rate feature, and so forth.

TILA's implementing regulation, Regulation Z, requires that in all transactions other than open end transactions, a creditor must make certain disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." See 12 C.F.R. § 226.17(a)(1).  Further, the required disclosures are to "be made before the credit is extended." 12 C.F.R. § 226.17(b).  There is no dispute that disclosures were made to plaintiff prior to the extension of credit.  The disputed issue is whether the disclosures were complete, and whether they were clear and conspicuous.

The Staff Commentary to Regulation Z states that "[t]he disclosures shall reflect the credit terms to which the parties are legally bound as of the outset of the transaction. . . . The legal obligation normally is presumed to be contained in the note or contract that evidences the agreement."  12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1).

Here, plaintiff argues that the loan documents violate TILA because they fail to disclose the "interest rate," fail to disclose that the initial "interest rate" was discounted, fail

6

to disclose the "interest rate" that the payment schedule is based on, and fail to disclose the certainty of negative amortization.

First, plaintiff argues that the loan documents did not clearly and conspicuously disclose the interest rate. She claims that the Note discloses an interest rate of 1.2%, while the TILDS discloses as the "cost of credit" an interest rate of 8.28%. Plaintiff asserts that this "discrepancy" is due to the misleading way in which the note discloses the interest rate (which was only an initial rate). Plaintiff asserts that to be clear and conspicuous, the disclosures must be presented in a way that does not obscure the relationship of the terms to each other (citing Commentary to 12 C.F.R. § 226(17)(a)(l)-1). Plaintiff claims that this "inconsistency" between the initial interest rate and the actual interest rate constitutes a TILA violation.

Under 15 U.S.C. § 1638, lenders are required to disclose the cost of a loan to the borrower "as an 'annual percentage rate' using that term." 15 U.S.C. § 1638(a)(4). TILA defines the term "APR" as the "cost of your credit as a yearly rate." 12 C.F.R. § 226.18(e). Where, as here, a loan's initial interest rate subsequently is adjusted, the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation." Commentary, 12 C.F.R. Pt. 226.17(C)-6. Section 1638(a)(8) requires lenders to provide a brief "descriptive explanation[ ]" of the APR. See also 12 C.F.R. § 226.18(e). The disclosure and explanation of the cost of the loan as an annual percentage rate must be clear and conspicuous. Commentary, 12 C.F.R. Pt. 226.17(a)(1)-1.

Plaintiff's argument appears to be that the material information was obscured because the APR in the TILDS conflicts with the "interest rate" listed in the Note and the Loan Program Disclosure. The TILDS states that the "annual percentage rate" is 8.2812%. The Note states that the "interest rate" is 8.25%, but that it may change starting in January 2007 (and will never exceed 10.95%). The Note also states that the initial monthly payment was calculated using a rate of 1.2%, which "is lower than the initial interest rate

7

stated in the prior section." The Loan Program Disclosure also states that "initial discounted monthly payment" will be calculated "using a rate that is lower than your initial interest rate."

TILA equates "finance charge" with "annual percentage rate." The disclosures make clear that the "annual percentage rate" is "the cost of your credit at an annual rate," while the "interest rate" is limited to the "interest that is charged on unpaid principal" and is based on an index. Thus, the "cost of credit" at an annual rate is not the same as the "interest rate."

Second, plaintiff asserts that defendants violated TILA by failing to disclose that the initial interest rate was discounted, or by discounting the rate in a way that is not based on the formula stated in the loan documents. A rate is "discounted" when it is less than the rate that would be determined by resort to the formula in the note for calculating the interest rate. See 12 C.F.R. Pt. 226, Supp. I ¶ 19(b)(2)(v)-1). Plaintiff claims that in this case, the initial rate was less than the rate indicated by the formula set forth in the loan, which was 3.39% plus the current index interest rate.

It is not clear whether plaintiff is arguing that defendants failed to disclose that the initial one-month "teaser" payment was discounted, or failed to disclose that the actual "initial interest rate" that kicked in after that one month was discounted. Nevertheless, as for any claim that defendants failed to disclose that the initial interest rate was discounted, the Loan Program Disclosure states that the loan is a "One-Month Treasury Average ARM (1 Month MTA ARM with initial discounted monthly payment)."

Moreover, the Loan Program Disclosure states that "[y]our initial interest rate for the Loan . . . will be equal to the sum of the Index plus the Margin described below, rounded to the nearest 1/8th percentage point." The Note states that the interest rate will be calculated by adding 3.9% (the "Margin") to the Current Index, and that amount will be rounded to the nearest 1.8%. Plaintiff provides no support for her claim that there was no disclosure of the fact that the "initial interest rate" was discounted.

Third, plaintiff contends that the TILDS has a monthly payment schedule setting forth

8

payments to be made for the duration of the loan, but fails to disclose the interest rate that the payment schedule is based on, which plaintiff asserts is contrary to Federal Reserve regulations and constitutes a TILA violation. For the reasons set forth above, this argument is without merit.

Fourth, plaintiff asserts that defendants violated 12 C.F.R. § 226.19(b) by failing to disclose that negative amortization was certain to occur. She argues that when a monthly payment does not cover interest for that month, and the unpaid interest is added to the principal, TILA requires disclosure of that fact. In this case, plaintiff asserts, negative amortization was a certainty, and that the note misleadingly stated that the amount she would be paying would be "lesser or greater" than the amount necessary to cover accruing interest. Plaintiff contends that failure to disclose that negative amortization is a certainty constitutes a violation of the "clear and conspicuous" disclosure requirement of TILA.

Regulation Z requires that a lender disclose "[a]ny rules relating to changes in the index, interest rate, payment limitations, negative amortization, and interest rate carryover." 12 C.F.R. § 226.19(b)(2)(vii). The Staff Commentary to Regulation Z makes clear that no disclosure may cause another disclosure to be obscured or made ambiguous. See 12 C.F.R. Pt. 226, Supp. I, ¶ 17(a)(1)-1.

Here, however, plaintiff's Program Disclosures contain all of the required disclosures concerning negative amortization. For example, the BankUnited Adjustable Rate Note states,

> My initial required monthly payment will not be sufficient to pay the interest that will accrue under this Note at the initial interest rate . . . and may be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that thereafter are in effect under this Note. . . . For each month that my monthly payment is less than the interest that accrues under this Note, the Note Holder will subtract the monthly payment from the amount of the accrued interest, and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest that is in effect under this Note from time to time.

Similarly, the Loan Program Disclosure for the One-Month Treasury Average Adjustable Rate Mortgage states,

> "[t]he amount of your initial monthly payment will be stated in the Note, and

9

> your initial monthly payment will be calculated using a rate that is lower than your initial interest rate. We will determine your initial monthly payment based upon this rate, your initial Loan balance, and the original term of your Loan. As a result, your initial monthly payment will not be sufficient to pay the interest that will accrue under the Note at the initial interest rate, and may be lesser or greater than the amount sufficient to pay the interest that will accrue under the Note at the interest rates that are thereafter in effect under the note. This means that if you make only the required monthly payment then, beginning with your first monthly payment, there will be "negative amortization" on your Loan.

Then, in a separate paragraph, in bold-face print, the Loan Program Disclosure states,

> As noted above, if you only make the required monthly payment then, beginning with your first monthly payment, there will be "negative amortization" on your Loan. There will be additional negative amortization if the monthly payments that you subsequently make are less than the accrued interest on your Loan. If there is negative amortization on your Loan, you will owe more money than you originally borrowed. When negative amortization occurs, you will eventually have to make larger monthly payments in order to pay off your Loan during the scheduled Loan term. In deciding whether this is the right Loan for you, you should consider your ability to afford substantial increases in your monthly payments in the future.

It is true that the TILDS itself does not specifically mention negative amortization. However, district courts have applied the requirements of § 226.19 to loan documents beyond the actual TILDS, such as note agreements. See, e.g., Plascencia v. Lending 1st Mortgage, 2008 WL 1902698, at *4-6 (N.D. Cal. Apr. 28, 2008); Pham v. T.J. Fin., Inc., 2008 WL 3485589, at *2 (C.D. Cal. Aug. 11, 2008).

As for plaintiff's claim that the loan documents treat negative amortization as a mere possibility rather than as a certainty, that argument is belied by the bold-face statement in the Loan Program Disclosure, as well as the other statements in the loan documents to the effect that there "will be" negative amortization if the monthly payments made are less than what is required to pay the accrued interest on the loan.

In sum, the court finds that defendants have demonstrated that all the required TILA disclosures were made, and summary judgment can therefore be granted in their favor. Plaintiff has failed to meet her burden of showing that triable issues exist with regard to whether the required TILA disclosures were made. This ruling eliminates any necessity of considering whether or not the statute of limitations had run on plaintiff's TILA claim before

she filed the complaint in the present action.

Summary judgment is also granted as to the § 17200 claim, which simply restates the allegations that form the basis of the TILA claim. See Krantz v. BT Visual Images, LLC, 89 Cal. App. 4th 164, 178 (2001) (viability of UCL claim stands or falls with the antecedent substantive cause of action). To the extent that plaintiff is suggesting that GMAC and Wells Fargo should be held vicariously liable for the purported actions of BankUnited under § 17200, that claim fails as a matter of law because a claim under § 17200 cannot be predicated on vicarious liability. See Emery v. Visa Int'l Serv. Ass'n, 95 Cal. App. 4th 952, 960 (2002); People v. Toomey, 157 Cal. App. 3d 1, 14 (1984).

## CONCLUSION

In accordance with the foregoing, defendants' motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED. No later than October 17, 2011, plaintiff shall file a motion for default judgment as to the remaining defendants, Haynes and Lakeshore, or a request for dismissal.

The December 5, 2011 trial date is VACATED.

**IT IS SO ORDERED.**

Dated: September 26, 2011

_____
PHYLLIS J. HAMILTON
United States District Judge